UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN FLOYD, III,

                          Plaintiff,

        v.

127 OFFICER ROSEN, OFFICER
MAGSMEN, *and* CITY OF MIDDLETOWN
MUNICIPALITY,

                          Defendants.

No. 21-CV-1668 (KMK)

OPINION & ORDER

John Floyd, III
Brocton, NY
*Pro Se Plaintiff*

Alex J. Smith, Esq.
Corporation Counsel of the City of Middletown
Middletown, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        John Floyd, III ("Plaintiff"), proceeding pro se, brings this Action against the City of

Middletown (the "City") and Middletown Police Department ("MPD") Officers Rosen ("Rosen")

and Magsmen ("Magsmen"), alleging violations of his Fourth, Fifth, and Fourteenth Amendment

rights arising out of Plaintiff's August 20, 2018 arrest and conviction for narcotics possession.

(*See generally* Compl. (Dkt. No. 1).)  Before the Court is Defendants' Motion To Dismiss the

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Not. of

Mot. (Dkt. No. 33).)  For the foregoing reasons, the Motion is granted.

## I.  Background

### A.  Materials Considered

As a threshold matter, the Court determines the proper treatment of a number of exhibits attached to Defendants' Motion and Plaintiff's Opposition.  Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the [c]omplaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56."  *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." (alteration omitted) (quoting *Saimels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993))).  "Moreover, 'where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.'"  *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 394 (S.D.N.Y. 2015) (alteration omitted) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

1.  Defendants' Exhibits

Defendants attach the following exhibits to their Motion: (1) the Complaint, (*see* Decl. of Alex Smith in Supp. of Mot. ("Smith Decl.") (Dkt. No. 34) Ex. A (Dkt. No. 34-1)); (2) the MPD incident report from the August 20, 2018 search which precipitated Plaintiff's arrest, (*see* Smith Decl. Ex. B (Dkt. No. 34-2)); (3) the warrant for the aforementioned search, dated August 17, 2018, (*see* Smith Decl. Ex. C (Dkt. No. 34-3)); (4) the affidavit/application for the aforementioned warrant, dated August 17, 2018, (*see* Smith Decl. Ex. D (Dkt. No. 34-4)); (5) the receipt/return for the search, dated August 20, 2018, (*see* Smith Decl. Ex. E (Dkt. No. 34-5)); (6) the transcript from Plaintiff's August 31, 2018 arraignment and guilty plea before the Orange County Court, (*see* Smith Decl. Ex. F (Dkt. No. 34-6)); (7) the forfeiture settlement agreement that Plaintiff signed before his sentencing, (*see* Smith Decl. Ex. G (Dkt. No. 34-7)); (8) the transcript from Plaintiff's December 21, 2018 sentencing by the Orange County Court, (*see* Smith Decl. Ex. H (Dkt. No. 34-8)); (9) the text of § 36-4A of the Middletown City Code, (*see* Smith Decl. Ex. I (Dkt. No. 34-9)); and (10) the text of Federal Rule of Civil Procedure 56, (*see* Smith Decl. Ex. J (Dkt. No. 34-10)).  It is axiomatic that the Court can consider the Complaint, and equally clear that the Court can consider § 36-4A of the Middletown City Code and Rule 56, to the extent relevant.  This leaves the incident report; the search warrant and the materials related to it; the transcripts from Plaintiff's arraignment, guilty plea, and sentencing; and the forfeiture agreement, which Defendants argue were either incorporated into the Complaint by reference or are subject to judicial notice.  (*See* Smith Decl. ¶ 2.)

"Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed."  *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017)

3

(emphasis omitted) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to the complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." (alterations omitted) (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012))). The Court finds that none of these documents has been incorporated by reference into the Complaint because none of the documents was referenced in the Complaint. (*See generally* Compl.) *See also Hutson v. Notorious B.I.G., LLC*, No. 14-CV-2307, 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015) (declining to consider documents on a motion to dismiss as incorporated by reference where "they are not referenced in the [complaint]"). To the contrary, as to the search warrant, Plaintiff specifically alleges in the Complaint that Defendants did not have a search warrant, (*see* Compl. 7); as such, Plaintiff not only does not reference the search warrant in the Complaint, he specifically denies its existence.[1] *See, e.g.*, *Yi Sun v. N.Y.C. Police Dep't*, No. 18-CV-11002, 2020 WL 4530354, at *7 n.7 (S.D.N.Y. Aug. 6, 2020) (declining to consider a 311 activity log on a motion to dismiss where "[t]he . . . complaint does not allege that any call to 311 was made").

However, "[c]ourts may take judicial notice of public documents and matters of public record," *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018), including "document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Glob. Network*

---

[1] When citing to the Complaint, the Court refers to the ECF-stamped page numbers at the top-right corner of each page.

*Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quotation marks omitted). Beginning with the transcripts from Plaintiff's arraignment, guilty plea, and sentencing, "courts routinely take judicial notice—at the motion to dismiss stage—of transcripts of related judicial proceedings, including criminal proceedings," and this Court will do the same here. *Coggins v. County of Nassau*, No. 07-CV-3624, 2008 WL 2522501, at *7 (E.D.N.Y. June 20, 2008) (collecting cases); *see also Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("Here, the [c]ourt finds it proper to take judicial notice of [the] plaintiff's guilty plea, conviction, and sentencing as a matter of public record without converting [the] defendant's motion [to dismiss] into one for summary judgment."). The Court will also take judicial notice of Plaintiff's forfeiture agreement. *See Smith v. Rossini*, No. 19-CV-323, 2020 WL 9816016, at *2 n.4 (E.D.N.Y. Nov. 30, 2020) (collecting cases for the proposition that a court may take judicial notice of public records, including records of criminal cases). Next, the Court will take judicial notice of the fact that an application for a search warrant was made, a search warrant was issued, and a search warrant was executed. *See Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014) ("In deciding a motion to dismiss, a court may take judicial notice of public records, including [a warrant application].") ; *Moore v. City of New York*, No. 08-CV-2449, 2011 WL 795103, at *1 n.2 (E.D.N.Y. Feb. 28, 2011) ("[T]he [c]ourt takes judicial notice of the relevant search warrant and other public documents filed in connection with state court litigation concerning the search warrant."). However, the Court will not take judicial notice of the incident report, because Defendants do not represent that the incident report was filed in another court or is otherwise a matter of public record. *See Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 398 (S.D.N.Y. 2015) (declining to take judicial notice of incident report where "[the] [d]efendants do not represent . . . that the [i]ncident [r]eport . . . w[as] filed in a

court in connection with [the] [p]laintiff's bench trial," "[n]or do they argue that the documents are appropriate for consideration based on other Second Circuit precedent"); *Peterec v. Hilliard*, No. 12-CV-3044, 2013 WL 5178328, at *3 (S.D.N.Y. Sept. 16, 2013) ("It is not proper . . . for [the court] to consider . . . the incident report . . . in resolving a motion to dismiss where, as here, they were not attached, incorporated by reference, or integral to the [complaint].").

### 2.  Plaintiff's Exhibits

Plaintiff attaches the following exhibits to his Opposition: (1) an envelope addressed to Plaintiff's counsel in his criminal case with a postage date of October 20, 2018, which Plaintiff claims held a letter from Plaintiff requesting certain discovery materials in Plaintiff's criminal case, (*see* Dkt. No. 45, at 5); (2) a letter from the Orange County Clerk, dated January 22, 2021, in response to a request from Plaintiff under the New York Freedom of Information Law ("FOIL"), (*see id.* at 6); (3) a FOIL request from Plaintiff, dated February 19, 2021, seeking materials pertaining to Plaintiff's criminal indictment, (*see id.* at 7); (4) a second FOIL request from Plaintiff, dated December 3, 2018, again seeking materials pertaining to Plaintiff's criminal indictment, (*see id.* at 8).[2]  In light of Plaintiff's pro se status and the fact that these documents are consistent with Plaintiff's allegations in the Complaint that he repeatedly made requests for materials concerning his indictment, (*see* Compl. 8), the Court will consider these documents. *See Fishman v. City of New Rochelle*, No. 19-CV-265, 2021 WL 4925518, at *4 (S.D.N.Y. Oct. 19, 2021) ("Although [the] [p]laintiff's exhibits were not attached to the [c]omplaint, the [c]ourt may consider documents attached to opposition papers if they are consistent with the allegations in the [c]omplaint and [the] [p]laintiff is proceeding pro se." (italics omitted)); *Clark v. Suffolk County*, No. 14-CV-7195, 2018 WL 1221171, at *1 (E.D.N.Y. Feb. 7, 2018) ("[T]he

---

[2] When citing to the letter to which Plaintiff attached the exhibits to his Opposition, the Court refers to the ECF-stamped page numbers at the top-right corner of each page.

[c]ourt may consider documents that a pro se plaintiff attaches to his opposition papers." (italics omitted)), *report and recommendation adopted*, 2018 WL 1221133 (E.D.N.Y. Mar. 8, 2018).

In any event, the Court notes that the consideration or non-consideration of most of the documents attached to either Defendants' Motion or Plaintiff's Opposition does not affect the outcome of Defendants' Motion.

B. Factual Background

The following facts are taken from the Complaint and are assumed to be true for purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam). Where relevant, the Court also recounts facts from the various other materials the Court has ruled it may consider in deciding Defendants' Motion To Dismiss.

On August 20, 2018, Rosen and Magsmen entered Plaintiff's girlfriend's home at approximately 5am, arrested Plaintiff, and conducted a search of the home. (*See* Compl. 7; *see also* Smith Decl. Ex. E.) Plaintiff alleges that he was "cuffed" without explanation and that Rosen and Magsmen refused to provide him with a copy of the search warrant, which had been issued several days earlier. (*See* Compl. 7; *see also* Smith Decl. Ex. C.) Neither Plaintiff nor his girlfriend consented to the search. (*See* Compl. 7.) The receipt/return on the search warrant states that Rosen and Magsmen seized: 8.3 grams of crack cocaine, packaging material, a New York State ID card, $1,051 in U.S. currency, a digital scale, and 4 cell phones. (*See* Smith Decl. Ex. E.) Plaintiff was arraigned on August 31, 2018 before the Orange County Court, and pled guilty to Criminal Possession of a Controlled Substance in the Third Degree. (*See* Smith Decl. Ex. F.) On December 21, 2018, Plaintiff was sentenced to five years of probation and 1,000 hours of community service, to be completed over five years. (*See* Smith Decl. Ex. H.) Plaintiff also agreed to forfeit the $1,051 that had been seized. (*See* Smith Decl. Ex. G.)

Plaintiff alleges that over the course of his criminal proceedings in Orange County Court, he was denied certain discovery by then-Orange County District Attorney Janine Kovacs ("Kovacs"), despite his multiple requests for the documents. (*See* Compl. 8.) Plaintiff's inability to attain these documents persisted after his conviction and sentencing, forcing Plaintiff to file multiple FOIL requests. (*See id.*)

Plaintiff is currently in the process of pursuing an appeal to the New York Appellate Division. (*See* Pl.'s Mem. 3 ("At this time the plaintiff would like the Court to be made aware of the fact that he is currently awaiting a final determination of his appeal, stemming from the conviction of the August 20, 2018 search and seizure, and arrest.").)

C.  Procedural History

Plaintiff's Complaint was docketed on February 25, 2021, bringing claims against the City, Rosen, and Magsmen, in addition to Kovacs. (*See* Compl.) The Complaint was followed by Plaintiff's application for the Court to appoint pro bono counsel on May 14, 2021. (*See* Appl. for Pro Bono Counsel (Dkt. No. 6).) On June 3, 2021, Plaintiff's request to proceed in forma pauperis was granted, and accordingly, the Court issued an Order of Service on June 7, 2021. (*See* Dkt. Nos. 9, 12.) In the Order of Service, the Court dismissed Plaintiff's claims against Kovacs pursuant to 28 U.S.C. § 1915(e)(2)(b)(i), because Kovacs is protected by absolute prosecutorial immunity. (*See* Dkt. No. 12, at 2–3.) On June 22, 2021, the Court denied Plaintiff's request for pro bono counsel without prejudice. (*See* Dkt. No. 16.) On July 6 and July 30, 2021, Plaintiff's second and third requests for pro bono counsel were docketed, (*see* Dkt. Nos. 22, 24, 25, 31), both of which were denied, (*see* Dkt. Nos. 23, 40).

Meanwhile, on July 19, 2021, Defendants filed a pre-motion letter in anticipation of moving to dismiss the Complaint, (*see* Dkt. No. 27), and on July 29, 2021, the Court set a briefing schedule, (*see* Dkt. No. 29). Defendants filed their Motion To Dismiss on August 31,

2021.  (*See* Not. of Mot.; Smith Decl.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.")

(Dkt. No. 35).)  After seeking and receiving an extension of time to respond, (*see* Dkt. Nos. 37,

38, 39), Plaintiff's Opposition was docketed on November 10, 2021, (*see* Not. of Opp'n (Dkt.

No. 41); Decl. of John Floyd, III in Opp'n to Mot. ("Pl. Decl.") (Dkt. No. 42); Pl.'s Mem. of

Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 43).)  Defendants filed their Reply in the form of

an affidavit on November 22, 2021.  (*See* Reply Decl. of Alex Smith in Supp. of Mot. ("Reply

Smith Decl.") (Dkt. No. 46).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to

plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

　　"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95 (citation omitted).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  As noted, however, when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), and, moreover, must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  That said, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

10

(S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

### B.  Analysis

Liberally construed, Plaintiff claims a series of constitutional violations arising from his August 20, 2018 arrest, including (1) a violation of his Fourth and Fourteenth Amendment rights based on what Plaintiff claims was a warrantless search of his girlfriend's home, conducted without probable cause, (*see* Compl. 7); (2) an additional violation of his Fourth and Fourteenth Amendment rights based on what Plaintiff claims was a false arrest and a malicious prosecution, which Plaintiff claims was based on falsified evidence, (*see id.* at 8; *see also* Pl.'s Mem. 5–7)[3]; and (3) a violation of his Fourteenth Amendment rights via the denial of discovery, which the Court construes as a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), (*see* Compl. 8). Plaintiff also seeks to hold the City liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (*See id.* at 9.)  Plaintiff is not specific as to the type of relief he seeks, stating only that he "want[s] all relief deemed fit & proper from the Courts & the message sent that our right [sic] can not [sic] be violated & those who do pay for their actions."  (*See id.* at 5.)

Defendants argue that the Complaint must be dismissed in its entirety, because (1) Plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), (Defs.' Mem. 5–7), (2) Plaintiff fails to state a claim for false arrest, malicious prosecution, or falsified evidence (*see id.* at 7–12); (3) Plaintiff fails to state a claim for municipal liability under *Monell*, (*see id.* at 12–15); (4) any state law claims must be dismissed for failure to serve a notice of claim upon the

---

[3] When citing to Plaintiff's Opposition, the Court refers to the ECF-stamped page numbers at the top-right corner of each page.

City, as required under New York state law, and as time-barred (*see id.* at 15–18); and (5) Rosen and Magsmen are protected by qualified immunity, (*see id.* at 18).

The Court will address these arguments to the extent necessary to decide the instant Motion.

### 1.  Federal Claims for Injunctive Relief

As a preliminary matter, to the extent Plaintiff seeks injunctive relief in the form of an order directing the Orange County Court or the Appellate Division to vacate his guilty plea and reverse his conviction, the Court cannot grant this relief.  In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that federal courts "in the interest of comity, should abstain from hearing a case that would interfere with an on-going state criminal proceeding." *Kunz v. N.Y. Comm'n on Jud. Conduct*, 356 F. Supp. 2d 188, 192 (N.D.N.Y. 2005) (citing *Younger*); *see also Spargo v. N.Y. Comm'n on Jud. Conduct*, 351 F.3d 65, 74–75 (2d Cir. 2003) (noting that *Younger* abstention is grounded in principles of comity and federalism and that "[b]oth considerations require federal courts to be cognizant that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways" (quotation marks omitted)).  "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo*, 351 F.3d at 75.  The Second Circuit has held that *Younger* is inapplicable to § 1983 claims seeking money damages, but *Younger* abstention continues to apply to claims for injunctive relief brought pursuant to § 1983. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 196 n.2 (2d Cir. 2002); *Rivers v. McLeod*, 252 F.3d 99, 101–02 (2d Cir. 2001) (per curiam); *Homere v. Incorporated Village of Hempstead*, 322 F. Supp. 3d 353, 368 (E.D.N.Y. 2018) (noting that "an exercise of abstention may be appropriate

under *Younger*, but only . . . to the extent [the] [p]laintiffs seek injunctive relief in the instance federal proceeding" because "abstention is inappropriate where a plaintiff seeks money damages for alleged constitutional violations pursuant to [§] 1983" (citation omitted)).

The *Younger* requirements are all met here. Plaintiff is in the process of pursuing an appeal to the Appellate Division, and it implicates an important state interest because "it is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one." *Hansel v. Town Ct. for the Town of Springfield*, 56 F.3d 391, 393 (2d Cir. 1995); *see also Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) ("*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."); *Colon v. Vance*, No. 18-CV-10058, 2019 WL 2867024, at *2 n.2 (S.D.N.Y. July 3, 2019) ("[T]he State of New York has an important interest in enforcing its criminal laws."); *Rolle v. McCarthy*, No. 02-CV-4398, 2005 WL 5885366, at *4 (E.D.N.Y. June 21, 2005) ("The administration of criminal justice in the state courts of New York is undoubtedly an important state interest."). And, there is no suggestion that Plaintiff's pending appeal in New York state court will not provide him with an adequate opportunity for judicial review on his federal constitutional claims. *See, e.g.*, *Burke v. Reid-Cherry*, No. 20-CV-1835, 2021 WL 2092669, at *5 (S.D.N.Y. May 24, 2021) ("[C]ourts in this Circuit have repeatedly found that New York state courts afford a plaintiff an adequate opportunity for judicial review of constitutional claims." (citing, inter alia, *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 355 (E.D.N.Y. 2014))). In fact, "*Younger* generally prohibits courts from 'taking jurisdiction over federal constitutional claims that involve or call

into question ongoing state proceedings' so as to avoid unnecessary friction." *Spargo*, 351 F.3d at 75 (quoting *Diamond "D" Constr.*, 282 F.3d at 198).[4]

Accordingly, to the extent Plaintiff requests injunctive relief that would impact his ongoing state court case, that claim for relief is denied.

### 2.  Federal Claims for Damages

#### a.  Application of *Heck*

Defendants argue that because Plaintiff "is challenging the legitimacy of the execution of the [search] warrant and his arrest," Plaintiff's claims are barred by *Heck*.  (*See* Defs.' Mem. 5–7.)  While the Court agrees that Plaintiff's claims would be barred by *Heck*, the Court declines to dismiss Plaintiff's claims on this basis, because it is unclear whether Plaintiff is "in custody" on the conviction underlying this Action.

---

[4] The Second Circuit has noted that "[d]espite the strong policy in favor of abstention, even where *Younger* would otherwise apply, a federal court may still intervene in state proceedings if the plaintiff demonstrates bad faith, harassment[,] or any other unusual circumstance that would call for equitable relief." *Spargo*, 351 F.3d at 75 n.11 (quotation marks omitted).  "[F]or a federal plaintiff to invoke the bad faith exception, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome[,] . . . [and the] federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Constr.*, 282 F.3d at 199 (quotation marks omitted).  "It is the plaintiff who has the burden of establishing that the bad faith exception applies." *Wilson v. Emond*, No. 08-CV-1399, 2009 WL 1491511, at *2 (D. Conn. May 28, 2009).  For the extraordinary circumstance exception to apply, the state court must be "incapable of fairly and fully adjudicating the federal issues before it," and, "whatever else is required, such circumstances must be extraordinary in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Diamond "D" Constr.*, 282 F.3d at 201 (quotation marks omitted) (quoting *Kugler v. Helfant*, 421 U.S. 117, 124–25 (1975)).

While Plaintiff has broadly accused Kovacs—the then-Orange County District Attorney—of pursuing a malicious prosecution against him, (*see* Compl. 8), he has failed to put forth any facts to establish that the prosecution against him was brought in bad faith.  Rather, the prosecution against Plaintiff appears to have been "nothing more than a straightforward enforcement of the laws of New York." *Diamond "D" Constr.*, 282 F.3d at 199 (quotation marks omitted).  Therefore, the Court finds that the bad faith exception does not apply here.

The Supreme Court in *Heck v. Humphrey* held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal courts issuance of a writ of habeas corpus, [pursuant to] 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87 (footnote omitted); *see also Muhammed v. Close*, 540 U.S. 749, 751 (2004) ("In *Heck . . .* , we held that where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."); *Poventud v. City of New York*, 750 F.3d 121, 128 (2d Cir. 2014) (en banc) ("The Supreme Court . . . has effectively subordinated the § 1983 remedy to the writ of habeas corpus when the remedies would overlap (and to some extent, even when they do not)." (alteration, italics, and citation omitted)).  As the Second Circuit has recently explained, the Supreme Court was concerned that "allowing a [§] 1983 plaintiff to seek damages while serving a sentence on the underlying conviction would promote an end-run around Congress's choice that habeas corpus, with its strict procedural rules, be the sole basis for challenging the constitutional validity of an outstanding state criminal conviction."  *Smalls v. Collins*, 10 F.4th 117, 136 (2d Cir. 2021) (citing *Heck*, 512 U.S. at 480–84).  Accordingly, it is now well-settled that "[a] civil rights claim pursuant to 42 U.S.C. § 1983 is not a substitute for a direct appeal from a criminal conviction or a challenge to the conviction by way of a habeas corpus petition or similar motion for post-conviction relief."  *McKay v. E. Hartford Police Dep't*, No. 16-CV-1954, 2017 WL 4247383, at *2 (D. Conn. Sept. 25, 2017).

15

Here, it is clear that all of Plaintiff's claims would be barred, because success on any of them would "implicitly question the validity of [Plaintiff's] conviction." *Muhammed*, 540 U.S. at 750. Beginning with Plaintiff's Fourth Amendment search and seizure claim: while "*Heck* acknowledges that many unreasonable searches could lead to § 1983 actions that exist independent of the termination of the criminal proceedings," *Poventud*, 750 F.3d at 132, "district courts have frequently found that § 1983 actions targeting a single episode involving a single search[] necessarily demonstrate the invalidity of a conviction based on that search," *El v. City of New York*, No. 14-CV-9055, 2015 WL 1873099, at *4 (S.D.N.Y. Apr. 23, 2015). As such, where, as here, a plaintiff's conviction "for possession of narcotics stems solely from evidence obtained [from] . . . a single episode involving a single search," courts routinely hold that "success on [the] [p]laintiff's § 1983 claim that the search was unlawful would necessarily imply the invalidity of his conviction." *Id.* (dismissing Fourth Amendment claim as "barred under *Heck*" where the plaintiff "[pled] guilty to the charges that he knowingly possessed narcotics"); *see also Monroe v. Gould*, 372 F. Supp. 3d 197, 203 (S.D.N.Y. 2019) ("Having pleaded guilty to criminal possession of a controlled substance, success on [the] plaintiff's [§] 1983 claim that the search was unlawful would necessarily imply the invalidity of his conviction. Therefore, [the] plaintiff's claim concerning the search which led to the discovery of cocaine is barred by [*Heck*]."); *cf. Paulin v. Town of New Windsor*, No. 18-CV-6182, 2020 WL 5898958, at *8 (S.D.N.Y. Oct. 5, 2020) (ruling, on summary judgment, that where "[the] [p]laintiff ultimately pled guilty to attempted criminal possession of a controlled substance in the third degree . . . based on the narcotics found at the [a]partment," "[the] [p]laintiff's claim for relief asserting that he was subject to an unreasonable search and seizure is plainly barred by *Heck* because success on [the] [plaintiff's] § 1983 claim that the search was unlawful would

necessarily imply the invalidity of his conviction" (alteration and quotation marks omitted)). Plaintiff's Fourth Amendment search and seizure claim would be therefore barred.

Plaintiff's Fourth Amendment claims for false arrest and malicious prosecution would fare no better. Suits for both malicious prosecution and false arrest require a plaintiff to demonstrate that the resulting proceeding terminated in his or her favor. *See Poventud*, 750 F.3d at 130–31 ("Malicious prosecution suits require, as an element of the offense, the termination of the proceeding in favor of the accused." (quotation marks omitted)); *Horvath v. City of New York*, No. 12-CV-6005, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or § 1983. . . . [Thus,] [a] valid prosecution resulting in conviction is conclusive evidence that probable cause existed for an arrest, even if the conviction is the result of a guilty plea to a lesser charge than that for which [the] plaintiff was arrested." (citations omitted)); *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 428 (S.D.N.Y. 2012) ("When a [§] 1983 plaintiff pleads guilty to the underlying or lesser included charge, this fact *alone* provides sufficient evidence that probable cause existed at the time of the arrest and precludes a false arrest claim under [§] 1983." (alterations omitted) (emphasis in original) (quoting *Feurtado v. Gillespie*, No. 04-CV-3405, 2005 WL 3088327, at *4 (E.D.N.Y. Nov. 17, 2005))); *see also John v. Lewis*, Nos. 15-CV-5346, 15-CV-6853, 2017 WL 1208428, at *10 (E.D.N.Y. Mar. 31, 2017) ("In this Circuit, a plaintiff cannot establish any false arrest or malicious prosecution claim if he pleads guilty to a lesser offense pursuant to a plea agreement." (alterations and citation omitted)). Therefore, success on a § 1983 claim for malicious prosecution or false arrest where the plaintiff has been convicted—via guilty plea or otherwise— necessarily requires a finding that the conviction is invalid. *See Poventud*, 750 F.3d at 131–32

17

(explaining that "[i]n the context of § 1983 malicious prosecution cases, *Heck*'s bar is coextensive with the favorable termination requirement" because "[e]ither the outstanding conviction was invalid, or the elements of malicious prosecution [are] not met"); *see also Barnes v. City of New York*, No. 13-CV-7283, 2015 WL 4076007, at *16 (S.D.N.Y. July 2, 2015) ("Where the plaintiff[']s underlying conviction has not been so invalidated, courts routinely dismiss [§] 1983 claims for, inter alia, malicious prosecution, conspiracy, and deprivation of the right to a fair trial pursuant to *Heck*." (italics omitted) (collecting cases)). Here, Plaintiff pled guilty to Criminal Possession of a Controlled Substance in the Third Degree. *See supra* I.B. Therefore, Plaintiff's claims for false arrest and malicious prosecution could not stand under *Heck*.

Finally, as for Plaintiff's *Brady* claim, the Second Circuit "has emphatically and properly confirmed that *Brady*-based § 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the *Brady* violation occurred." *Poventud*, 750 F.3d at 132 (emphasis omitted) (citing *Amaker v. Weiner*, 79 F.3d 48, 51–52 (2d Cir. 1999)); *see also id.* ("That should come as no surprise; the remedy for a *Brady* violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the *Brady* material available to her."); *Hurley v. Town of Southampton*, No. 17-CV-5543, 2018 WL 3941944, at *15 (E.D.N.Y. Aug. 13, 2018) (report and recommendation) (explaining that "[the] [p]laintiff's *Brady* claim is barred by *Heck* [because] [the] [p]laintiff has not alleged that his convictions . . . , based on his guilty pleas, among other things, have been invalidated in any way"), *report and recommendation adopted* (E.D.N.Y. Sept. 21, 2018). Plaintiff's *Brady* claim would therefore be barred under *Heck* as well.

18

Accordingly, the Court finds that Plaintiff's claims would be subject to dismissal as barred by *Heck*. However, because it is not clear to the Court whether Plaintiff is currently in custody on the conviction which precipitated this Action, the Court declines to dismiss Plaintiff's claims on *Heck* grounds.

Courts have held that "*Heck* does not bar § 1983 claims when habeas is unavailable," such as when the plaintiff is no longer "in custody" and thus is ineligible for § 2254 relief. *Teichmann v. New York*, 769 F.3d 821, 829–30 (2d Cir. 2014) (Calabresi, J., concurring); *see also* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). However, there is a "deep circuit split" on validity of this exception, *Teichmann*, 769 F.3d at 829, and intra-circuit disputes over its scope, *see, e.g.*, *Opperisano v. Jones*, 286 F. Supp. 3d 450, 457–60 (E.D.N.Y. 2018); *see also Chapman v. Fais*, 540 F. Supp. 3d 304, 307 (E.D.N.Y. 2021) ("The Second Circuit has not squarely determined whether *Heck* applies once a plaintiff is no longer in custody, and the issue remains controversial."). Plaintiff here falls into one such grey area.

Plaintiff was sentenced to a term of five years of probation on December 21, 2018 after pleading guilty to Criminal Possession of a Controlled Substance in the Third Degree on August 31, 2018. *See supra* I.B. Had Plaintiff been on probation at the time he filed the Complaint in February 2021, this would have been considered "custody" for § 2254 purposes. *See United States ex rel. B. v. Shelly*, 430 F.2d 215, 217 n.3 (2d Cir. 1970) (explaining that the Supreme Court's decision in *Jones v. Cunningham*, 371 U.S. 236 (1963) "clearly holds that parole is custody [and] we are directed to no reason or authority which would distinguish

probation from parole in habeas corpus applications").  However, it appears that at the time
Plaintiff initiated the instant Action, he was in physical custody of DOCCS on different charges.
Defendants note in their Memorandum of Law that Plaintiff recently brought a challenge to
another conviction.  (*See* Defs.' Mem. 12 n.17.)  Plaintiff filed that lawsuit after he initiated the
instant Action, and noted in that complaint—dated May 5, 2021—that he has been incarcerated
at the Orange County Jail since his July 22, 2020 arraignment on a series of charges stemming
from incidents that took place on July 4, 2020 and July 7, 2020.  (*See* Compl., *Floyd v. Cuomo*,
No. 21-CV-4096, Dkt. No. 2 (S.D.N.Y. May 5, 2021).)  *See also Glob. Network Commc'ns*, 458
F.3d at 157 ("A court may take judicial notice of a document filed in another court.").  While it is
possible that Plaintiff was imprisoned for violating the terms of his probation and was thus in
custody on the conviction which precipitated this Action at the time he filed the Complaint,
neither Party has addressed this issue; the Court thus declines to rule conclusively that *Heck*
applies to these circumstances to bar Plaintiff's claims.

  Instead, the Court dismisses each of Plaintiff's claims as meritless, for the reasons
described below.  *See Teichmann*, 769 F.3d at 829 (Calabresi, J., concurring) ("[T]here are many
cases that have the potential to raise *Heck* questions [that] can be disposed of based on well-
settled principles upon which there is broad agreement, and when that is so, it is generally
desirable for . . . district courts to decide them on these non *Heck* grounds.").

### b.  Municipal Liability

  First, Plaintiff's claims against the City cannot stand.  "To state a claim under [§ 1983],
the plaintiff must show that a defendant, acting under color of state law, deprived him of a
federal constitutional or statutory right."  *Sykes*, 723 F.3d at 405–06.  However, "Congress did
not intend municipalities to be held liable [under § 1983] unless action pursuant to official
municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  Thus,

"to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Williams v. Lohard*, No. 20-CV-10571, 2022 WL 269164, at *3 (S.D.N.Y. Jan. 28, 2022) ("[The] [p]laintiff's claim against the [c]ity fails for lack of facts supporting the existence of a municipal policy or practice." (citing cases)); *Palmer v. City of New York*, — F. Supp. 3d —, 2021 WL 4480572, at *7–8 (E.D.N.Y. Sept. 30, 2021) (dismissing claim against city where the plaintiffs failed to "sufficiently allege[] that they suffered constitutional violations as a result of an official policy or custom" (quotation marks omitted)).  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong" (emphasis in original)).  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's

constitutional rights.").  "In determining municipal liability, it is necessary to conduct a separate

inquiry into whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York*, 228

F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).  Normally, "a

custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by

a mere employee of the [municipality]."  *Newton*, 566 F. Supp. 2d at 271; *see also City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single

incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless

proof of the incident proof that it was caused by an existing, unconstitutional municipal policy,

which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*,

200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient

to establish the affirmative link between the municipal policy or custom and the alleged

unconstitutional violation.").

    A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted);

*see also Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2014) (describing

methods of establishing *Monell* liability).  Moreover, as indicated above, a plaintiff must also

establish a causal link between the municipality's policy, custom, or practice and the alleged

constitutional injury.  *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might

lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular

policy be the 'moving force' behind a constitutional violation.  There must at least be an

affirmative link between[,] [for example,] the training inadequacies alleged, and the particular

constitutional violation at issue." (emphasis omitted)); *Batista v. Rodriguez*, 702 F.2d 393, 397

(2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the

plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Hincapie v. City of

New York*, 434 F. Supp. 3d 61, 77 (S.D.N.Y. 2020) (finding that the plaintiff "fails to state a

*Monell* claim" because the plaintiff "has not pled facts demonstrating a direct link between his

injuries and the alleged municipal policy"); *Johnson v. City of New York*, No. 06-CV-9426, 2011

WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a

municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative

link—between the policy and the deprivation of his constitutional rights" (quotation marks

omitted)).

  Here, Plaintiff appears to allege two theories of municipal liability: (1) that the City is

liable "due to the fact that the [City] had multiple employees & agents engage in wrongdoing,"

and (2) that the Defendants "violat[ed] . . . multiple municipal policies, customs & practices

[which] caused the violation of [Plaintiff's] constitutional rights."  (Compl. 9.)  Neither theory

suffices to establish municipal liability under *Monell*.  First, as explained above, "a municipality

may not be held liable under § 1983 solely because it employs a tortfeasor," *Brown*, 520 U.S. at

403; as such, to the extent Plaintiff attempts to argue that the City is liable based solely on its

employment of Rosen and Magsmen, this argument fails.  Second, Plaintiff's bare allegation that

certain "municipal policies, customs & practices" existed and were violated by Rosen and

Magsmen, (*see* Compl. 9), is "conclusory, and therefore must be disregarded."  *Simms v. City of*

*New York*, No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing conclusory allegations that did not provide sufficient facts to allow the court to infer what city policies or practices led to the alleged deficiency), *aff'd*, 480 F. App'x 627 (2d Cir. 2012); *see also Bohmer v. New York*, No. 06-CV-11370, 2011 WL 2651872, at *3 (S.D.N.Y. June 16, 2011) ("Boilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of the plaintiff's rights are insufficient."); *Moore v. City of New York*, No. 08-CV-8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence, are plainly insufficient." (quotation marks omitted)).  Moreover, an allegation that municipal policies were violated can never support a finding of municipal liability, because it is the "antithesis of a *Monell* claim."  *Thomas v. DuBois*, No. 19-CV-7533, 2020 WL 2092426, at *4 (S.D.N.Y. Apr. 30, 2020) (quoting *Adams v. Orange County*, No. 13-CV-8549, 2014 WL 6646042, at *4 (S.D.N.Y. Nov. 12, 2014)).  This is because any alleged violation of Plaintiff's constitutional rights would have been caused by "the *failure* to follow a policy, not the policy itself," and "[b]y definition, such allegations fail to state a claim under *Monell*."  *Id.* (emphasis in original) (collecting cases); *see also Williams v. City of N.Y. Dep't of Corr.*, No. 19-CV-9528, 2020 WL 3893929, at *6 n.5 (S.D.N.Y. July 10, 2020) ("[T]his claim is not that the [defendant's] policy was improper, but that [the defendant's] officers failed to follow their own policy.  An alleged failure to follow a policy 'is the antithesis of a link between policy and action,' and is insufficient to state a claim under *Monell*." (quoting *Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *7 (S.D.N.Y. June 23, 2010))).

Accordingly, Plaintiff's claims against the City are dismissed.

c.  Official Capacity Claims

To the extent Plaintiff seeks to bring claims against Rosen and Magsmen in their official capacities, these claims fail for the same reason that Plaintiff's *Monell* claim against the City fails.  Rosen and Magsmen are municipal employees as MPD police officers, and as such, claims against them in their official capacities "'are tantamount to claims against the municipality itself.'"  *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 588 (S.D.N.Y. 2014) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)); *see also Patterson*, 375 F.3d at 226 ("[A] claim against a municipal employee in his official capacity is deemed brought against the municipality itself." (citation omitted)); *Davis v. Stratton*, 360 F. App'x 182, 183 (2d Cir. 2010) (summary order) ("The suit against the mayor and police chief in their official capacities is essentially a suit against the [city], because in a suit against a public entity, naming officials of the public entity in their official capacities adds nothing to the suit."  (alteration and quotation marks omitted)).  As such, "'there must be proof of [a municipal] custom or policy [that caused the plaintiff's alleged constitutional deprivation] in order to permit recovery on claims against individual municipal employees in their official capacities,'" and for the reasons outlined above, Plaintiff here has failed to adequately allege the existence of such a custom or policy.  *Fierro*, 994 F. Supp. 2d at 588 (quoting *Dwares*, 985 F.2d at 100); *see also Carr v. County of Sullivan*, No. 16-CV-6850, 2018 WL 3733952, at 5 n.8 (S.D.N.Y. Aug. 3, 2018) ("Given that [the] [p]laintiff has not plausibly alleged the existence of an official policy or custom, the claims against the municipal employees in their official capacities are dismissed.").

Accordingly, Plaintiff's claims against Rosen and Magsmen in their official capacities are dismissed.

d.  Individual Capacity Claims

The Court's holdings above leave Plaintiff's claims for damages against Rosen and Magsmen in their individual capacities.  However, the Court finds each of these claims to be subject to dismissal, for the reasons described below.

i.  Fourth Amendment Search and Seizure Claim

Plaintiff claims that Rosen and Magsmen violated his Fourth Amendment rights by illegally entering and performing a search of his girlfriend's home without a warrant.  (Compl. 7.)  Moreover, Plaintiff alleges that neither he nor his girlfriend consented to the search, and argues that because he was not engaged in criminal activity at the time the search was conducted, the search incident to arrest exception to the warrant requirement does not apply.  (*See id.*)

The Supreme Court has explained that the Fourth Amendment "imposes two requirements."  *Kentucky v. King*, 563 U.S. 452, 459 (2011).  "First, all searches and seizures must be reasonable.  Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity."  *Id.*  Moreover, "[a]lthough the text of the Fourth Amendment does not specify when a search warrant must be obtained," the Supreme Court has also held that "'[i]t is a basic principle of Fourth Amendment law . . . that searches and seizures inside of a home without a warrant are presumptively unreasonable.'"  *Id.* (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).  However, the reverse is also true: "A search is presumptively reasonable when executed pursuant to a warrant."  *Merriweather v. City of New York*, No. 12-CV-5258, 2015 WL 57399, at *6 (S.D.N.Y. Jan. 5, 2015) ("A search warrant issued by a neutral magistrate, upon a finding of probable cause, must be afforded great deference and creates a presumption that the officers executing the warrant acted in an objectively reasonable fashion." (collecting cases)); *see also Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) ("[A] search pursuant to a warrant issued by a judicial

officer upon a finding of probable cause is presumptively reasonable." (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991))).

Here, the basis of Plaintiff's Fourth Amendment search and seizure claim is that Rosen and Magsmen's search and seizure was conducted without a warrant.  (*See* Compl. 7.)  However, the Court has taken judicial notice of the fact that Rosen and Magsmen's search and seizure was, in fact, conducted pursuant to a search warrant.  (*See* Smith Decl. Ex. C.)  *See also supra* I.A.1.  As such, the Court finds that the search was presumptively reasonable, and Plaintiff has put forth no allegations to rebut this presumption.  (*See generally* Compl.)  The Court need not go any further in dismissing Plaintiff's Fourth Amendment search and seizure claim as meritless.[5]

### ii.  Fourth Amendment Malicious Prosecution and False Arrest Claims

Plaintiff's claims for malicious prosecution and false arrest under the Fourth Amendment fail on the merits for the same reasons that the Court found them to be barred under *Heck*.  *See supra* II.B.2.a.  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an

---

[5] In his Opposition papers, Plaintiff appears to change tack, seemingly arguing that the court's finding of probable cause in issuing the warrant was in error, because the court's finding was based, in part, on hearsay information from a confidential informant, who accused Plaintiff of conduct for which he was never indicted.  (*See* Pl.'s Mem. 3–5; Pl. Decl. 6–8.)  These arguments—beyond being inconsistent with Plaintiff's allegations in the Complaint—are meritless.

The standard for probable cause does not mirror the standard for a finding of guilt in a criminal prosecution, and the trial protections afforded to criminal defendants (such as the rule against hearsay) do not apply to the consideration of a warrant application.  *See, e.g.*, *Walczyk v. Rio*, 496 F.3d 139, 156–57 (2d Cir. 2007) ("'Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place' in a probable cause determination." (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983))).  Instead, "probable cause is a 'fluid concept' that can vary with the facts of each case," and a magistrate reviewing a warrant application is instructed to consider the "totality of the circumstances" in determining whether the probable cause standard is met.  *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 232, 238).  As part of these assessments, magistrates may consider—among other things—"hearsay, including the hearsay statements of a confidential informant."  *United States v. Harding*, 273 F. Supp. 2d 411, 418 (S.D.N.Y. 2003).

individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (quotation marks omitted).  Under New York law, a plaintiff claiming false arrest must show "that the defendant intentionally confined him without his consent and without justification." *Id.* (citation omitted).  "In order to state a claim for the tort of malicious prosecution under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions.'" *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)).  Thus, "[p]robable cause is a complete defense to any action for false arrest or malicious prosecution in New York." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (citing *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).

The Second Circuit has explained that where a plaintiff brings an action "asserting false arrest, false imprisonment, or malicious prosecution, . . . the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested," because "the fact of that conviction [functions] as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest." *Cameron v. Fogarty*, 806 F.2d 380, 387–88 (2d Cir. 1986).  And, "[c]ourts apply the principles enunciated in *Cameron* even when the conviction was the result of a guilty plea to a lesser offense." *John*, 2017 WL 1208428, at *10 (collecting cases); *see also Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996) ("[C]ommon law principles preclude a challenge to the validity of an arrest after a guilty plea, for purposes of a civil suit under . . . § 1983.").  As such, "[w]hen a [§] 1983 plaintiff pleads guilty to the underlying or a

lesser charge, this fact *alone* provides sufficient evidence that probable cause existed at the time of the arrest and precludes a false arrest claim under [§] 1983." *Hayes*, 853 F. Supp. 2d at 428 (alterations and citation omitted) (emphasis in original); *see also Blackwood v. Omorvan*, No. 16-CV-644, 2019 WL 4600662, at *7 (S.D.N.Y. Sept. 23, 2019) ("[A] guilty plea is not a termination in favor of the accused for purposes of a malicious prosecution claim." (quoting *Rivera v. City of Yonkers*, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007))); *John*, 2017 WL 1208428, at *10 ("In this Circuit, a plaintiff cannot establish any false arrest or malicious prosecution claim if he pleads guilty to a lesser offense pursuant to a plea agreement." (alterations and citation omitted)).

Here, Plaintiff pled guilty to Criminal Possession of a Controlled Substance in the Third Degree. *See supra* I.B.  The fact of Plaintiff's conviction serves as conclusive evidence that Plaintiff's arrest and prosecution were supported by probable cause, and thus, his claims for false arrest and malicious prosecution fail as a matter of law.  *See, e.g.*, *Hayes*, 853 F. Supp. 2d at 428 ("[A]s [the] [p]laintiff pleaded guilty to the criminal charges which arose from his arrest . . . he is barred as a matter of law from bringing a claim for false arrest under § 1983.").  Accordingly, these claims are dismissed.

### iii.  Fourteenth Amendment *Brady* Claim

"The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Brady*, 373 U.S. at 87).  "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." *Id.*  "To demonstrate such a deprivation, a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and

(3) the failure to disclose this evidence resulted in prejudice." *Id.* at 140; *see also Ying Li v. City of New York*, 246 F. Supp. 3d 578, 627 (E.D.N.Y. 2017) ("A classic *Brady* violation contains three elements: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. . . . To establish prejudice, a plaintiff must show that the evidence was material; i.e., whether the evidentiary suppression undermines confidence in the outcome of the trial." (citation omitted) (quoting *Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016))). "When police officers withhold exculpatory or impeaching evidence from prosecutors, they may be held liable under § 1983 for violating the disclosure requirements of [*Brady*]." *Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019); *cf. Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992) ("[T]he police satisfy their obligations under *Brady* when they turn exculpatory evidence over to the prosecutors.").

While Plaintiff broadly alleges that he was "denied [his] charges, Bill of Particulars & Discovery amongst all other documents needed proven neccessary [sic] to formulate a proper defense," (Compl. 8), he has failed to identify with any specificity what evidence was allegedly withheld, let alone that this hypothetical evidence was material, (*see generally id.*). As such, Plaintiff has failed to plausibly state a claim under *Brady*. *See Myers v. County of Nassau*, 825 F. Supp. 2d 359, 368 (E.D.N.Y. 2011) ("As to any *Brady* claim, there is no allegation that [the] [d]efendants withheld exculpatory evidence. Therefore, to the extent that [the] [p]laintiff attempts to state a Fifth Amendment claim under *Brady*, he sets forth no facts supporting any such theory."); *cf. Isaac v. City of New York*, No. 16-CV-4729, 2018 WL 5020173, at *11–12 (E.D.N.Y. Aug. 6, 2018) (finding that allegations "which specifically identif[y] . . . the evidence

that [the defendant-police officers] allegedly fabricated and transmitted to the prosecutors" were "adequate to state a *Brady* violation claim").[6]

Moreover, even assuming arguendo that Plaintiff had specifically identified material evidence that was withheld during his state proceedings sufficient to state a *Brady* claim, he has failed to allege that either Rosen or Magsmen was personally involved in the alleged violation. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must plausibly allege that the defendant's actions fall into one of the following five categories:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

---

[6] Plaintiff appears to argue in his Opposition that the *Brady* material that was allegedly withheld from him was the search warrant. (*See* Pl.'s Mem. 2 (arguing that "Plaintiff was unable to knowingly challenge the legitimacy of the search warrant and any of the evidence held against him, because at the time the plaintiff was never in receipt of his discovery, or given at all [sic]").) However, Plaintiff fails to demonstrate how the search warrant would have been considered exculpatory to Plaintiff, such that the alleged failure to disclose the search warrant prejudiced Plaintiff. Moreover, while not dispositive, it is possible that the reason that Plaintiff allegedly was not provided with a copy of the search warrant or with an opportunity to challenge the legitimacy of it is because Plaintiff chose to plead guilty at his arraignment—which took place less than two weeks after his arrest. *Cf. United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974) ("Neither *Brady* nor any other case we know of requires that disclosures under *Brady* must be made before *trial*." (emphasis added)).
.

*Id.* at 139.  In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Here, Plaintiff has failed to allege that either Rosen or Magsmen was personally involved in the alleged *Brady* violation.  Rather, Plaintiff specifically identifies Kovacs as responsible for "den[ying] & depriv[ing] [Plaintiff] of [his] documents!" (Compl. 8.)  However, as explained, the Court has already dismissed Kovacs from this Action based on her absolute prosecutorial immunity.  *See supra* I.C.  Having failed to either identify the material evidence that was allegedly withheld or to link Rosen and Magsmen to this suppression, Plaintiff has failed to state a cognizable claim under *Brady*.

Accordingly, this claim is dismissed.[7]

### 3.  State Law Claims

As the Court has dismissed Plaintiff's federal causes of action, it declines to exercise supplemental jurisdiction over Plaintiff's state law claims, to the extent Plaintiff intends to bring them.  *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Torres v. City of New York*, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003) ("Where the basis for pendent jurisdiction is dismissed, ordinarily so should the state law claims be dismissed.").

---

[7] To the extent Plaintiff sought to bring any other federal constitutional claims, (*see, e.g.*, Compl. 4 ("My protected constitutional right [sic] have been continuously violated by all said Defendants to with [sic] but not limited to, false arrest, illegal entry & illegal search & seizure w/o warrant.  Malicious & coersed [sic] prosecution falsified evidence & voted indictment, perjury, illegal sentence & denied discovery to due process [sic]."), 5 ("Mental anguish of being violated in front of innocent children & with such disrespect & no regard to my rights or humans/mens [sic] with rights! and having my name connected to a homicide I know nothing about.")), these claims are dismissed as "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted.  However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider.  The amended complaint will replace, not supplement, the original complaint and must be filed within 30 days of this Opinion and Order.  The amended complaint must therefore contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider.  The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda.  If Plaintiff fails to abide by the 30-day deadline, this Action may be dismissed with prejudice.  There shall be no extensions.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 33), and mail a copy of this Opinion & Order to Plaintiff at the address listed in the docket.

SO ORDERED.

Dated:   May 9, 2022
       White Plains, New York

                                                 KENNETH M. KARAS
                                      United States District Judge